IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| CECIL ERIC FOX, #172955, ) | Civil Action No. 3:08-2945-TLW-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| )  | **REPORT AND RECOMMENDATION** |
| ) | |
| JON OZMINT; AND ) | |
| ROBERT WARD, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

This action was filed by the pro se Plaintiff on August 27, 2008.[1] Plaintiff alleges that Defendants violated his constitutional rights by subjecting him to excessive force, failing to properly address his medical needs, denying him access to the courts, and denying him his due process rights. He is an inmate at the Lee Correctional Institution ("LCI") of the South Carolina Department of Corrections ("SCDC"). At the time of the alleged incidents, he was housed at various SCDC correctional institutions. Defendants are SCDC Director Jon Ozmint ("Ozmint") and LCI Warden Robert Ward ("Ward"). On February 10, 2009, Defendants filed a motion for summary judgment. Because Plaintiff is proceeding pro se, he was advised on February 11, 2009, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendants' motion for summary judgment with additional evidence or counter-affidavits could result in the dismissal of his complaint. Plaintiff filed responses on April 10 and 20, 2009.

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02 (B)(2)(d), DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the court.

## MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

On October 31, 2008, Plaintiff filed a motion asking for a temporary restraining order and preliminary injunction. He requests that he receive protection from Defendants and proper medical care. Plaintiff alleges that while he was in his cell he is attacked by flying objects which have the capability to enter his body and cause injury to his vital organs, the objects poison him, he is shocked by high voltage electricity, and he is beaten by "some form of high pressure devi[c]e." He claims that it took numerous visits to SCDC medical personnel before tests were ordered. Plaintiff also alleges that his family and legal mail is being removed from the mailbox and divulged to the inmate population and that officers and other inmates question him while he is resting at night which causes him concern for his family's safety. Defendants contend that Plaintiff's motion should be denied because they have not violated any of Plaintiff's constitutional or statutory rights, Plaintiff is unlikely to succeed on the merits, and Defendants and the public interest would be harmed if Plaintiff's request (taking him from the custody of SCDC) is granted as he committed the offense of armed robbery and is a danger to society.

The undersigned construes this pleading as a motion for preliminary injunctive relief. The court is required to consider and balance four factors in determining whether to grant injunctive relief prior to a trial on the merits:

> (a) plaintiff's likelihood of success in the underlying dispute between the parties;
>
> (b) whether plaintiff will suffer irreparable injury if the interim relief is denied;
>
> (c) the injury to defendant if an injunction is issued; and
>
> (d) the public interest.

2

Manning v. Hunt, 119 F.3d 254, 263 (4th Cir. 1997); Hughes Network Sys., Inc. v. InterDigital Commc'n Corp., 17 F.3d 691, 693 (4th Cir. 1994); North Carolina State Ports Auth. v. Dart Containerline Co., Ltd., 592 F.2d 749 (4th Cir. 1979); and Blackwelder Furniture Co. v. Seilig Mfg. Co., 550 F.2d 189 (4th Cir. 1977). The two most important factors are probable irreparable injury to a plaintiff if the relief is not granted and the likelihood of harm to a defendant if the injunction is granted. Manning, 119 F.3d at 263; North Carolina State Ports Auth., 592 F.2d at 750.

A plaintiff does not have an automatic right to a preliminary injunction, and such relief should be used sparingly. The primary purpose of injunctive relief is to preserve the status quo pending a resolution on the merits. Injunctive relief which changes the status quo pending trial is limited to cases where "the exigencies of the situation demand such relief." Wetzel v. Edwards, 635 F.2d 283, 286 (4th Cir. 1980).

Plaintiff is unlikely to be successful in the underlying dispute, as discussed further below. He also fails to show that he will suffer irreparable injury if he is not granted a TRO or preliminary injunction. Further, Plaintiff fails to show that it would be in the public's interest to grant him the requested relief.

**MOTION FOR SUMMARY JUDGMENT**

Plaintiff alleges that Defendants violated his constitutional rights by using excessive force against him, failing to provide him with proper medical care, improperly processing his grievances, and denying him access to the courts. Defendants contend that their motion for summary judgment should be granted because: (1) Plaintiff failed to exhaust his available administrative remedies;[2] (2)

---

[2]"No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until
(continued...)

Defendants are entitled to qualified immunity; (3) Defendants cannot be held liable on a theory of respondeat superior; (4) Defendants in their official capacities are not "persons" under § 1983; (5) Plaintiff fails to show that he was deprived of his right to be free from excessive force; (6) Plaintiff fails to show that his Eighth Amendment rights were violated as to his conditions of confinement; (7) Plaintiff makes no viable claim that Defendants were constitutionally deficient in their supervisory duties; (8) Plaintiff fails to show that Defendants withheld or prevented communication with Plaintiff's family; (9) any perceived state law claims should be dismissed under the discretion of the court; and (10) Plaintiff's claims for injunctive relief should be denied because Plaintiff fails to show a sufficient likelihood that he will be wronged again in a similar way.

1.  **Excessive Force**

Plaintiff alleges that Defendants used excessive force against him by using flying objects to attack his internal organs. He also claims that he heard the voices of inmates and correctional officers who instructed him not to eat, sleep, or use the restroom because the correctional officers were poisoning him.[3] He claims that the correctional officers questioned him in his sleep

---

[2](...continued) such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In Porter v. Nussle, 534 U.S. 516 (2002), the Supreme Court held that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. Porter, 534 U.S. at 532. Defendants have not submitted copies of the grievances, making analysis of whether Plaintiff exhausted his administrative remedies impossible as it cannot be determined from the record what issues Plaintiff grieved and which he exhausted or did not exhaust.

[3]To the extent that Plaintiff is attempting to assert a failure to protect claim, he fails to show that his constitutional rights were violated. He has not shown any injury from any alleged attacks by other inmates. Plaintiff fails to show that his constitutional rights were violated. He has not shown that Defendants knew he faced a substantial risk of serious harm or that Defendants consciously disregarded that risk. See Farmer v. Brennan, 511 U.S. 825, 835 (1994).

about his personal and family life.[4] Defendants contend that Plaintiff has made no allegations that they personally performed the alleged actions and he fails to show an excessive force claim because he has not shown that the harm suffered was sufficiently serious. Ward states that none of the SCDC Special Management Units are equipped with the lethal weapons described in Plaintiff's complaint; inmates are not allowed to have lethal weapons; and although correctional officers can use chemical munitions, these weapons do not have the ability to fly around and enter a prisoner's body as described in the complaint. Ward Aff., Paras 4-6. Defendants also contend that Plaintiff's medical records document past problems with drug use and hallucinations and that his allegations are nothing more than continued colorful hallucinations.

Determination of whether cruel and unusual punishment has been inflicted on a prisoner in violation of the Eighth Amendment requires analysis of subjective and objective components. See Wilson v. Seiter, 501 U.S. 294, 302 (1991). First, the objective portion of an excessive force claim requires a prisoner to show that the injury inflicted was sufficiently serious. Although a plaintiff need not show a significant injury, see Hudson v. McMillian, 503 U.S. 1, 7 (1992), the Fourth Circuit, in Norman v. Taylor, 25 F.3d 1259 (4th Cir. 1994), cert. denied, 513 U.S. 1114 (1995), held that "absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is de minimis." Norman v. Taylor, 25 F.3d at 1263. Because de minimis injury may serve as evidence that de minimis force was used, an excessive force claim should not lie where a prisoner's injury is de minimis. See id. at 1262-63. With only de

---

[4]To the extent that Plaintiff makes allegations concerning his conditions of confinement, his claims fail because he has not shown any serious or significant physical or emotional injury resulting from the challenged conditions. See Strickler v. Waters, 989 F.2d 1375, 1380-81 (4th Cir.), cert. denied, 510 U.S. 949 (1993).

minimis physical injury, a prisoner may only recover if the challenged conduct resulted "in an impermissible infliction of pain" or was otherwise "of a sort repugnant to the conscience of mankind." Id. at 1263 n. 4. The Fourth Circuit has explained:

> We recognize that there may be highly unusual circumstances in which a particular application of force will cause relatively little, or perhaps no, enduring injury, but nonetheless will result in the impermissible infliction of pain. In these circumstances, we believe that either the force will be "of a sort repugnant to the conscience of mankind," and thus expressly outside the de minimis force exception, or the pain itself will be such that it can properly be said to constitute more than de minimis injury.

Id. at 1263, n. 4.

Plaintiff fails to establish an Eighth Amendment claim because he alleges no more than de minimis injury. Thus, any use of force by Defendants was de minimis. See, e.g., Norman, 25 F.3d at 1262-64 (keys swung at inmate's face which struck his thumb was de minimis force); Gavin v. Ammons, 21 F.3d 430, 1994 WL 117983 (7th Cir. April 6, 1994)[Table](guard's pulling of inmate's hair was de minimis force); Calabria v. Dubois, 23 F.3d 394, 1994 WL 209938 (1st Cir. May 24, 1994)[Table](radio belt thrown at face of inmate causing blood to appear was de minimis force); White v. Holmes, 21 F.3d 277, 280-81 (8th Cir. 1994)(keys swung at inmate which slashed his ear was de minimis force); Jackson v. Pitcher, 966 F.2d 1452, 1992 WL 133041 (6th Cir. June 16, 1992)[Table](guard's stomp on the hand of inmate was de minimis force), cert. denied, 506 U.S. 1024; Black Spotted Horse v. Else, 767 F.2d 516, 517 (8th Cir. 1985)(corrections officer's pushing a cubicle wall so as to strike plaintiff's legs, brusque order of the inmate out of his cell and poking inmate in the back was de minimis force); see also Roberts v. Samardvich, 909 F. Supp. 594 (N.D.Ind. 1995)(grabbing inmate, pushing him up the stairs toward his cell, and placing him in cell cuffed, shackled, and secured to the door was de minimis force under the circumstances); McMiller

6

v. Wolf, 1995 WL 529620 (W.D.N.Y. August 28, 1995)(snatching inmate's mirror, breaking it against cell bars and thereby lacerating inmate's finger was de minimis force); Crow v. Leach, 1995 WL 456357 (N.D.Cal. July 28, 1995)(corrections officer's pushing inmate into chair causing his shoulder to break window behind him was de minimis force); Jackson v. Hurley, 1993 WL 515688 (N.D.Cal. November 23, 1993)(blow to back of neck with forearm and kick to the ankle of inmate were de minimis force); DeArmas v. Jaycox, 1993 WL 37501 (S.D.N.Y. February 8, 1993), aff'd, 14 F.3d 591 (2d Cir. 1993)(corrections officer's punching inmate in arm and kicking inmate in leg was de minimis force); Olson v. Coleman, 804 F. Supp. 148, 150 (D. Kan. 1992)(single blow to head of handcuffed inmate was de minimis force); Candelaria v. Coughlin, 787 F. Supp. 368, 374-75 (S.D.N.Y. 1992)(fist pushed against neck of inmate causing him to lose his breath was de minimis force), aff'd, 979 F.2d 845 (2d Cir. 1992)[Table]; Neal v. Miller, 778 F. Supp. 378, 384 (W.D.Mich. 1991)(backhand blow with fist to the groin of inmate was de minimis force); Ramos v. Hicks, 1988 WL 80176 (S.D.N.Y. July 25, 1988)("bent wrist comealong hold" or single punch not unreasonable or excessive where inmate ignored repeated order, became agitated, and attempted to damage state property); Anderson v. Sullivan, 702 F. Supp. 424, 426 (S.D.N.Y. 1988)(corrections officer's pulling inmate's arms behind back, lifting them up and forcing inmate's face into cell bars was de minimis force).

    **2.**    **Grievances**

Plaintiff alleges that the grievance coordinator at Tyger River and Allendale correctional institutions refused to process his grievances. Mary Coleman, who is in charge of inmate grievances for SCDC, provides that two of Plaintiff's grievances were returned because they were duplicates of ones previously filed, another was returned because it contained multiple issues,

Plaintiff accepted a negotiated resolution as to another grievance, and he appealed other grievances to the South Carolina Administrative Law Court. Coleman Aff.

Plaintiff fails to show that his constitutional rights were violated as to the processing of his grievances. The "Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by the state." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). Even assuming that Defendants violated SCDC grievance procedures, such actions do not state a claim which is actionable under § 1983. See Brown v. Dodson, 863 F. Supp. 284 (W.D.Va. 1994). Further, allegations that Defendants did not follow SCDC policies or procedures, standing alone, do not amount to constitutional violations. See United States v. Caceres, 440 U.S. 741 (1978); see also Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir. 1990)(if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue); Keeler v. Pea, 782 F. Supp. 42, 44 (D.S.C. 1992)(violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983).

### 3. Access to the Courts/Mail Claims

Plaintiff appears to allege that he was denied access to the courts because he received notices that his appeals of his grievances to the Administrative Law Court were denied and a judge's order stated the Plaintiff's brief was never received. He also claims that there is a mail scam because he has not heard from some of his family members and some stopped writing to him. Ward states that as far as he knows Plaintiff received appropriate access to the mail system. Ward Aff., Para. 3.

In Bounds v. Smith, 430 U.S. 817 (1977), the United States Supreme Court determined that prisoners have an absolute right to access to the courts, both to allow them to attack their convictions and to file other lawsuits. The decision merely requires that the right of access to the courts not be

impeded. The right of access to the courts is the "right to bring to court a grievance that the inmate wished to present," and violations of that right occur only when an inmate is "hindered [in] his efforts to pursue a legal claim." Lewis v. Casey, 518 U.S. 343 (1996). In order to make out a prima facie case of denial of access to the courts, the inmate cannot rely on conclusory allegations; he must identify with specificity an actual injury resulting from official conduct. Cochran v. Morris, 73 F.3d 1310, 1316 (4th Cir. 1996); see also White v. White, 886 F.2d 721, 723-24 (4th Cir. 1989); Strickler v. Waters, 989 F.2d 1375, 1382-85 (4th Cir. 1993), cert. denied, 510 U.S. 949 (1993). A plaintiff must demonstrate, for example, that the inadequacy of the prison law library or the available legal assistance caused such actual injury as the late filing of a court document or the dismissal of an otherwise meritorious claim. Lewis, 518 U.S. at 353-54.

Plaintiff has not alleged that the named Defendants prevented his access to his family or the mail system. He fails to show that his access to the courts has been violated as he has not shown any actual injury resulting from Defendants' alleged actions. See Bounds v. Smith and Lewis v. Casey, supra. In his complaint, Plaintiff alleges that certain court briefs he mailed were never received by the court. He fails, however, to provide sufficient information or any supporting documentation to allow meaningful analysis of his allegations.

### 4. Medical Claims

Plaintiff appears to allege that Defendants were deliberately indifferent to his serious medical needs because it took Dr. Bearden ten months before medical tests were ordered. He also claims that medical personnel at the various institutions conspired to cover up his medical test results. Defendants contends that Plaintiff has not named Dr. Bearden as a defendant in this action and that the medical treatment Plaintiff received does not rise to the level of deliberate indifference.

In the case of Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," Id., quoting Gregg v. Georgia, 428 U.S. 153, 169-73 (1976). The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met.
>
> * * * * * * *
>
> We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," Gregg v. Georgia, supra, at 182-83, 96 S.Ct. at 2925 (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Estelle, 429 U.S. at 103-105. (Footnotes omitted).

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation.

> Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit also considered this issue in the case of Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to

fundamental fairness (citations omitted). . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Id. at 851.

The Supreme Court defined "deliberate indifference" in the Eighth Amendment context in Farmer v. Brennan, 511 U.S. 825 (1994). The court held:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concern when it imposes tort liability on a purely objective basis. [Citations omitted]. But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Id. at 837-38.

Unless medical needs were serious or life threatening, and the defendants were deliberately and intentionally indifferent to those needs of which he was aware at the time, a plaintiff may not prevail. Estelle, supra; Farmer v. Brennan, supra; Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

Plaintiff has not alleged that Defendants Ozmint and/or Ward personally caused the alleged actions or inactions as to his medical claims. He fails to show deliberate indifference to any of his serious medical needs. Review of Plaintiff's medical records (attached to the affidavits of Dr. Bearden and SCDC Director of Inmate Health Information Resources Brenda Dash-Frazier) and the affidavit of Dr. Bearden (a physician employed by SCDC) reveals that Plaintiff was examined on numerous occasions for his complaints, medical tests were performed, and medications were

11

prescribed. Dr. Bearden states that he first saw Plaintiff on November 20, 2007, at which time Plaintiff complained of abdominal pain. Plaintiff reported that he had this symptom for more than ten years and he had Hepatitis C. Dr. Bearden states that Hepatitis C can cause abdominal pain. Dr. Bearden ordered ultrasounds and an upper GI test that day to evaluate Plaintiff's condition. Dr. Bearden states that it was difficult to obtain a meaningful history due to Plaintiff's psychiatric state, but he ordered all medically relevant tests. Plaintiff was sent to Image Care, a non-SCDC facility, for the tests. On December 14, 2007, Plaintiff complained of abdominal pain. The upper GI and ultrasound tests were normal, but Plaintiff tested positive for H-pylori and was treated for his condition. Dr. Bearden states that Plaintiff continued to seek medical attention almost every day for his abdominal pain, but Dr. Bearden could not find anything wrong with Plaintiff physically, other than his pre-existing Hepatitis C. Plaintiff also claimed that he was experiencing nausea and vomiting and could not eat, but Dr. Bearden noted that Plaintiff was gaining weight. Bearden Aff.

To the extent that Plaintiff disagrees with his medical care, he fails to show that his constitutional rights were violated. "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988). The provision of medical care by prison officials is not discretionary, but the type and amount of medical care is discretionary. See Brown v. Thompson, 868 F. Supp. 326 (S.D.Ga. 1994). A disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. See Smart v. Villar, 547 F.2d 112 (10th Cir. 1976); Lamb v. Maschner, 633 F. Supp. 351, 353 (D.Kan. 1986). Although Plaintiff may believe that he should have received different medical treatment, his allegations do not rise to the level of a constitutional violation.

### 5. **Supervisory Liability**

Defendants contend that Plaintiff fails to state a claim against them[5] and that they cannot be held liable under a theory of respondeat superior. The doctrine of respondeat superior generally is inapplicable to § 1983 suits, such that an employer or supervisor is not liable for the acts of his employees, absent an official policy or custom which results in illegal action. See Monell v. Department of Social Services, 436 U.S. 658, 694 (1978); Fisher v. Washington Metro Area Transit Authority, 690 F.2d 1133, 1142-43 (4th Cir. 1982). Higher officials may be held liable for the acts of their subordinates, however, if the official is aware of a pervasive, unreasonable risk of harm from a specified source and fails to take corrective action as a result of deliberate indifference or tacit authorization. Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984), cert. denied, Reed v. Slakan, 470 U.S. 1035 (1985).

Plaintiff has not alleged that Defendants Ozmint and/or Ward were personally responsible for any of the incidents or acted in any way other than a supervisory role. Further, Plaintiff has not shown that these Defendants were deliberately indifferent to, or tacitly authorized, any of the actions or inactions of SCDC employees. Thus, Plaintiff fails to show that Defendants Ozmint and/or Ward are liable on a theory of respondeat superior or supervisory liability.

### 6. **Immunity**

Defendants contend that they are entitled to Eleventh Amendment immunity. When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the

---

[5]Plaintiff named Ozmint and Ward as defendants, but does not mention them in the body of his Complaint and does not allege any specific or general acts or conduct on their part which violated his constitutional rights.

state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state. In the case of Will v. Michigan Department of State Police, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity [cites omitted] or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

Id. at 66.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments, and officials are entitled to Eleventh Amendment immunity. Id. at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself and, therefore, against the state. State officials may only be sued in their individual capacities. Therefore, Defendants are entitled to Eleventh Amendment immunity from monetary damages in their official capacities.

Defendants also contend that they are entitled to qualified immunity. The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not

14

> violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Id. at 818.

The Court of Appeals for the Fourth Circuit, discussing qualified immunity, stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994)(internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, Plaintiff has failed to show that Defendants violated any of his clearly established constitutional or statutory rights. Therefore, Defendants are entitled to qualified immunity in their individual capacities.

### 7. State Law Claims

Defendants contend that any state law claims should be dismissed under the discretion of the Court. As Plaintiff fails to show that Defendants violated his rights under § 1983 (as discussed above), only his state law claims would remain. Thus it is also recommended, pursuant to 28 U.S.C. § 1367(c)(3), that any remaining state law claims be dismissed.

### CONCLUSION

Based upon review of the record, it is recommended that Defendants' motion for summary judgment (Doc. 32) be **granted**. It is also recommended that Plaintiff's motion for a TRO and/or

15

preliminary injunction (Doc. 15) be **denied**.



_____
Joseph R. McCrorey
United States Magistrate Judge

April 27, 2009
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).